UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rick C. H., | Case No. 20-cv-2652 (KMM/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rick C. H. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits. This matter is before the Court on the parties' cross-motions for summary judgment [ECF Nos. 18, 27], which were referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends Plaintiff's motion be denied and the Commissioner's be granted.

I.   BACKGROUND

   A.   Procedural Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 25, 2018. (R. 161[1].) Plaintiff's application was denied at the initial and reconsideration

---

[1] The Court cites the Social Security Administrative Record as "R." and uses the pagination that appears in bold in the lower right corner of each page.

levels. (R. 24.) Plaintiff and a vocational expert testified before an Administrative Law Judge (ALJ) on March 3, 2020. (R.40–59.) On April 22, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 21–35.) The Appeals Council denied Plaintiff's request for review without substantive analysis on October 23, 2020. (R. 1-3.)

### B.    Relevant Records

The Court will recount the record evidence only to the extent it is helpful for context or necessary for resolution of the specific issues presented in the parties' motions. Plaintiff challenges the legal adequacy of certain steps of the ALJ's determination, not the evidentiary sufficiency of the ALJ's factual findings. Therefore, the Court does not recount any medical or other evidence in the record. The Court instead provides only a brief overview of the ALJ's determination and recounts relevant portions of the hearing transcript and the determination when discussing Plaintiff's arguments.

The ALJ follows a five-step sequential evaluation process for determining disability for DIB. 20 C.F.R. § 404.1520(a)(4). The five steps are: (1) whether the claimant's work activity, if any, is substantial gainful activity; (2) whether the claimant has any severe, medically determinable impairments meeting the duration requirement; (3) whether one or more of those impairments meets or medically equals the criteria of a listed impairment; (4) whether the claimant's residual functional capacity (RFC)[2] allows him to do past relevant work; and (5) whether the claimant's RFC and age, education, and work experience allow him to adjust to other available work. *Id.* (a)(4)(i)–(v). If the

---

[2] RFC measures the most a claimant can still do in a work setting, despite limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1).

2

ALJ determines at any step that the claimant is disabled or not disabled, the ALJ halts the evaluation. *Id.* (a)(4).

The ALJ found at step one of the evaluation process that Plaintiff had not engaged in substantial gainful activity since his alleged disability on-set date. (R. 26.) At step two the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease (DDD); bilateral hip degenerative joint disease (DJD), status post-1988 hip replacement; left shoulder DJD; and obesity. (R. 26.) At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29.) At the start of step four, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

- lift and carry 20 pounds occasionally and 10 pounds frequently
- sit for 6 hours and stand and/or walk 2 hours in an 8-hour day
- occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl and reach overhead
- no climbing of ladders, ropes or scaffolds, and
- avoid concentrated exposure to extreme cold temperatures, vibration and potential falling hazards such as unprotected heights and exposed machinery.

(R. 32.) At step four, the ALJ found Plaintiff was capable of performing past relevant work as a psychiatric social worker. (R. 34.) At that point, the ALJ found Plaintiff not disabled and halted the evaluation. (R. 34–35.)

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether the ALJ made a legal error and whether substantial evidence in the record as a whole supports the decision. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "Substantial evidence in the record as a whole requires a more searching review than the substantial evidence standard." *Grindley*, 9 F.4th at 627; *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). A court must consider evidence that fairly detracts from the ALJ's decision. *Grindley*, 9 F.4th at 627. But a court may not "reweigh" the evidence or reverse the ALJ's decision "merely because substantial evidence would have supported an opposite decision." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* A court will disturb the ALJ's decision only if it finds from the evidence as a whole that the decision "falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

A court must also ensure the ALJ adequately explained his findings and conclusions. The ALJ's determination must indicate which evidence the ALJ relied on and which he rejected, and his reasons for doing so, but he need not cite specific facts supporting specific findings and conclusions. *See Vance v. Berryhill*, 860 F.3d 1114, 1117–18 (8th Cir. 2017) (holding ALJ's findings at step four cured lack of elaboration at

4

step three); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (holding that the ALJ need not discuss every piece of evidence and not citing evidence does not indicate the ALJ did not consider it). But "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" if they might change the outcome of the determination; an ALJ, not a reviewing court, must resolve those issues. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). *See also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822–23 (8th Cir. 2008) (reversing when the ALJ's factual findings were insufficient for the court to conclude whether substantial evidence supported the determination); *David S. v. Saul*, No. 19-CV-3137 (ADM/LIB), 2021 WL 467348, at *3 (D. Minn. Jan. 25, 2021), report and recommendation adopted, 2021 WL 465281 (D. Minn. Feb. 9, 2021) ("a reviewing court cannot search the record to find other grounds to support the decision of the ALJ" when the decision does not provide that support) (cleaned up).

### III. DISCUSSION

Plaintiff argues that the ALJ's determination that he was not disabled suffered from a substantive error in that he failed to completely analyze the persuasiveness of a medical opinion. He alternatively argues the case should be remanded because the ALJ lacked the constitutional authority to decide his application.

    **A.**    **Whether the ALJ Erroneously Failed to Analyze the Persuasiveness of the Mental Health Consultant's Medical Opinion**

Plaintiff argues the ALJ erred by failing to describe how consistent and supportable he found the medical opinion of William Dickson, Ph.D., when identifying

Plaintiff's severe impairments at step two and constructing Plaintiff's RFC. (Pl's Mem. at 6–9 [ECF No. 19].) The Commissioner argues that the ALJ adequately explained why he found Dickson's opinion unpersuasive about Plaintiff's mental impairments. (Def's Mem. at 18–22 [ECF No. 28].)

An ALJ is not required to defer or give specific weight, including controlling weight, to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider how persuasive he finds each medical opinion about a claimant's impairments. *Id.* (b). An ALJ must consider consistency, supportability, the source's relationship with the claimant, the source's medical specialization, and other factors. *Id.* (c). Consistency and supportability are the most important factors, and the ALJ must explain how he considered them in the determination but need not do so for the other three. *Id.* (b)(2). Supportability examines how relevant the objective medical evidence and the source's explanations are to support the opinion. *Id.* (c)(1). Consistency refers to how well the opinion aligns with evidence from other medical and nonmedical sources. *Id.* (c)(2).

The Social Security Administration (SSA) hired Dickson, a mental health and disability expert, to evaluate Plaintiff for his application. (R. 28.) Dickson submitted an opinion on Plaintiff's mental functioning which the ALJ reviewed during step two. (R. 28.) The ALJ summarized the opinion:

> At a July 2018 consultative examination with William Dickson, PhD, LP, the claimant reported high school graduation, a two-year certificate in tool and die making and welding, and a subsequent degree in social work and criminal justice. He considered himself an average student with recall of verbal information compromised by problems with attention and concentration. He admitted to being increasingly reliant on

6

> his spouse for reminders regarding executive functions and daily activities. He endorsed low self esteem, frustration over health issues and chronic pain, and loss of motivation and interests affecting relationships. However, he continued to socialize with friends a few times per week and complete some household chores. Dr. Dickson diagnosed severe recurrent major depressive disorder, somatic symptom disorder, adjustment disorder with mixed anxiety and depressed mood as well as some evidence of an alcohol abuse pattern.

(R. 28.) The ALJ found during step two that Plaintiff had at most mild limitations in any area of mental functioning, and the evidence did not support the associated impairments being severe[3]. (R. 28–29.) The ALJ explained he was "persuaded in large part by the absence of any mental health treatment apart from minimal medication management" and that the mild limitations were "largely supported" by Plaintiff's subjective report of symptoms to Dickson and Plaintiff's reports of caring for himself while his wife worked. (R. 29.) But the ALJ found "little persuasive value" in Dickson's opinion because:

> [it] is generally based on subjective reports of pain, inconsistency with generally normal mental status examination findings made by Dr. Fletcher and in unrelated medical evaluations, as well as an observation of 'awkward gait,' which the claimant attributed to his hips, that was not consistent with findings made prior to and after the consultative examination and in the setting of a symptomatic headache.

(R. 29.) The ALJ had earlier reviewed the evidence mentioned here. (R. 26–28.) The Court concludes the ALJ sufficiently explained his findings on the supportability and consistency of Dickson's opinion, so he complied with the requirement of 20 C.F.R. § 1520c(b)(2).

---

[3] A severe impairment(s) significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

7

Plaintiff also argues that the ALJ's failure to correctly review the persuasiveness of Dickson's opinion prevents the Court form assessing how Dickson's opinion influenced the construction of any mental limitations in the RFC, so the Court cannot know if the RFC is supported by substantial evidence. (Pl's Mem. at 8–9.) The Court disagrees and concludes that the ALJ's description of the mental health evidence and the explanation of its persuasiveness, including Dickson's opinion, provides substantial evidence supporting the exclusion of any mental limitations from the RFC.

### B. Plaintiff's Challenge to the ALJ's Constitutional Authority to Decide Plaintiff's Disability Application

Plaintiff argues that under *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the position of Commissioner of the SSAhas unconstitutional removal protections. Therefore, he argues, the ALJ and the SSA Appeals Council, who derived their authority to determine Plaintiff's application from the Commissioner, lacked that authority, so the decision must be remanded to be decided by an ALJ and Appeals Council with proper authority. (Pl's Mem. at 9–14.) The Commissioner concedes that the structure of the Social Security Act, 42 U.S.C. § 902(a)(3), limiting the President's authority to remove the Commissioner without cause, violates constitutional separation of powers. (Def's Mem. at 4.) But the Commissioner advances several arguments as to why that does not justify setting aside the disability determination here. The Court will address each of those arguments in turn.

### 1. Whether the Circumstances of the ALJ's Appointment Obviate Plaintiff's Constitutional Challenge

The Commissioner first argues that the ALJ who denied Plaintiff's claim was

appointed by *Acting* Commissioner of Social Security Nancy Berryhill, whom the President could have removed at will, so there is no actual separation-of-powers concern in Plaintiff's case. (Def's Mem. at 6–8.) Plaintiff replies that he is not raising a concern with the ALJ's and Appeals Council members' appointments, but instead is challenging the authority of the ALJ and Appeals Council at the time they decided Plaintiff's application, when they would have been acting under a delegation from the then-appointed Commissioner, Andrew Saul, who at the time of the ALJ's and Appeals Council's determinations herein was unconstitutionally protected from removal. (Pl's Reply at 10–13 [ECF No. 31].)

The Court agrees with Plaintiff that the applicable temporal lens through which to view the authority of the ALJ and Appeals Council to determine Plaintiff's case is the time of the determination, not the time the ALJ and Appeals Council members were appointed. The authority of the ALJ and Appeals Council to decide Plaintiff's application was not irrevocably fixed at the time of their appointments, but instead derived from an ongoing delegation of authority from the Commissioner at the time they acted on Plaintiff's case. 42 U.S.C. § 405(b)(1) ("The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter"); 42 U.S.C. § 902(a)(7) ("The Commissioner may assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers

and employees shall have the same force and effect as though performed or rendered by the Commissioner."); HALLEX I-2-0-2(A) (explaining that an ALJ's authority to hear and decide a case is delegated from the Commissioner). Commissioner Saul took the post on July 17, 2019, and held it until July 9, 2021. *Social Security Commissioners*, S.S.A., https://www.ssa.gov/history/commissioners.html (last visited May 25, 2022). The question, therefore, is whether *Commissioner Saul's* unconstitutional removal protections undermined his authority—acting through the ALJ and the Appeals Council—to decide Plaintiff's case.

### 2. Whether the Unconstitutional Removal Protections Caused Plaintiff Actual Harm

The Commissioner next argues that Plaintiff cannot show he is entitled to a new determination because he cannot show the unconstitutional structure of Section 902(a)(3) caused him any harm, i.e., the denial of his application. (Def's Mem. at 8–12.) Plaintiff responds that his injury included not just the denial of his application, but also the denial of a hearing, adjudication, and decision before an ALJ and Appeals Council with valid constitutional authority. (Pl's Reply at 7–8.) He contends the removal protections are a structural constitutional error requiring reversal with no need for a showing of causation, but that in any event, he has shown causation. (Pl's Reply at 14–17.)[4]

---

[4] Plaintiff argues in his reply that the Commissioner waived any defense regarding the constitutionality of the Appeals Council's authority to decide his case because the Commissioner addressed only the authority of the ALJ in its response to Plaintiff's motion. (Pl's Reply at 8–9.) But the Commissioner addressed the Appeals Council in a footnote arguing, "Likewise, Plaintiff cannot conceivably show that the President's supposed inability to remove the Commissioner without cause affected the Appeals Council's denial of review of his specific claim." (Def's Mem. at 11, n. 5.) Thus, the

10

In general, remedies for violations of the Constitution must be aimed at eliminating harms that flow from the violation. *Milliken v. Bradley*, 433 U.S. 267, 282 (1977). In constructing a remedy, the court must carefully consider how the constitutional violation caused the harm for which the plaintiff seeks relief, and construct a remedy only for that harm. *Id.* In cases where a plaintiff cannot link a constitutional violation to a harm, the violation is harmless error, and a court cannot grant relief. *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *Izaak Walton League of Am., Inc. v. Tidwell*, Case No. 06-cv-3357 (RT/LIB), 2015 WL 632140, at *17 (D. Minn. Feb. 13, 2015) (quoting *Jicarilla Apache Nation v. U.S. Dep't of Interior,* 613 F.3d 1112, 1121 (D.C.Cir.2010) ("The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.").

But the Supreme Court recognizes a limited class of structural constitutional errors that require no showing of harm because they undermine confidence in the objectivity and fairness of a trial or adjudication, and because harm is extremely difficult to prove. *Vasquez v. Hillery*, 474 U.S. 254, 261–64 (1986). Such errors include, for example, the risk of gender and racial bias in jury selection, biased jurors or judges, and biased prosecutorial or grand jury decisions. *Id.*

### a.     Whether the Removal Protections Are a Structural

---

Commissioner clearly intended to convey that the same constitutional arguments presented for the ALJ also applied to the Appeals Council. Further, there is no reason to distinguish between the ALJ and the Appeals Council for the purposes of analyzing whether the Commissioner's removal protections harmed Plaintiff through the ALJ and Appeals Council actions. Plaintiff's own arguments did not distinguish between them.

### Constitutional Error That Requires No Showing of Harm

Plaintiff argues that the removal protections introduced a structural error in the ALJ's and Appeals Council's adjudication of his application. In support of this position, he points to cases addressing violations of the Constitution's Appointments Clause, in which courts described the improper appointment of administrative judges as a structural violation and required that the agency provide a new adjudication with a properly appointed judge. (Pl's Reply at 15–17 (citing *Carr v. Saul*, 141 S. Ct. 1352, 1356–62 (2021); *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153–54 (3d Cir. 2020); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000)).)

But the Supreme Court rejected this argument in *Collins v. Yellen*, 141 S. Ct. 1761, 1787–88 (2021). The plaintiffs in *Collins* argued that the Federal Housing Finance Agency (FHFA) Director's removal protections violated the constitutional separation-of-powers, and that prior separation-of-powers caselaw, including Appointment Clause cases, required reversal of the Director's actions without a showing of harm. *Id.* The Court rejected the comparison to the Appointment Clause cases:

> [M]ost of the cases they cite involved a Government actor's exercise of power that the actor did not lawfully possess. See *Lucia* v. *SEC*, 585 U. S. ——, —— (2018) (slip op., at 12) (administrative law judge appointed in violation of Appointments Clause). . . . As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office.

*Id.* at 1788. The Court also explained:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove*

12

> the confirmed Directors, there was no constitutional defect in
> the statutorily prescribed method of appointment to that office.
> As a result, there is no reason to regard any of the actions taken
> by the FHFA in relation to the third amendment as void.

*Id.* at 1787. *See also id.* at 1793 (Thomas, J. concurring) ("Here all the officers who headed the FHFA during the time in question were properly *appointed*. There is thus no barrier to them exercising power in the first instance.") (citation and quotation omitted), 1801 (Kagan, J. concurring) ("As the majority explains, the officers heading the FHFA, unlike those with invalid appointments, possessed the authority to carry out the functions of the office.") (citation and quotation omitted).

*Collins* teaches that the difference between Appointment Clause violations and unconstitutional removal protections is that an improperly appointed government officer lacks the authority of that office, so their actions are void. But an officer properly appointed may exercise the authority of his office even though the statute purports to grant him unconstitutional removal protections. *Id.* at 1787–88. Plaintiff does not contest that Commissioner Saul was properly appointed. Therefore, Commissioner Saul had the authority through the ALJ and Appeals Council to decide Plaintiff's case. The Commissioner's unconstitutional removal protections are not a structural harm requiring automatic reversal and remand. For the same reason, Plaintiff's argument that he was harmed simply by being denied a hearing, adjudication, and decision by an ALJ and Appeals Council with proper authority must fail, as they possessed that authority.

     **b.**  **Whether Plaintiff Suffered Actual Harm As a Result of the Removal Protections**

Plaintiff must instead show that the removal protections caused or allowed the

13

only remaining harm he raises, the unfavorable disability decision. Thus, as the Supreme Court explained in *Collins,* to be entitled to relief in a case of unconstitutional removal protection, a plaintiff must show that an officer's insulation from removal in some way caused or allowed the officer to harm him by, for example, blocking a President's attempt to remove the officer before the harmful act. *See id.* at 1788–89; *see also id.* at 1791–94 (Thomas, J. concurring) (reasoning that because the removal protections do not make the officer's exercise of authority unconstitutional, a plaintiff can only obtain relief when the protections allow or cause a harmful action), 1801 (Kagan, J. concurring[5]) ("[P]laintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision . . . Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.") (quoting *Milliken*, 433 U.S. at 280).

The Court in *Collins* hypothesized a President's attempt to remove an officer who subsequently harms a plaintiff, or an officer who purports to act with authority despite a President removing him. Justice Kagan's concurrence considered the example of Social Security disability decisions:

> Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. . . . [G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. "[P]residential control [does] not show itself in all, or even all important, regulation." Kagan, Presidential Administration, 114 Harv. L. Rev. 2245, 2250 (2001). When an agency decision would not

---

[5] Justices Sotomayor and Breyer joined this part of Justice Kagan's concurrence. *Id.* at 1803, n. 1.

> capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Id.* at 1802.

Plaintiff argues he is able to show harm because but-for the unconstitutional delegation of authority to the ALJ and Appeals Council, they never could have adjudicated his application. (Pl's Reply at 17–18.) But as discussed above, these officers had constitutional authority to adjudicate his application.

Plaintiff also argues that he was harmed simply by the violation of his constitutional rights and does not need to show a separate "tangible" harm to be owed a reversal and remand. (Pl's Reply at 18.) But as the discussion of *Collins* shows, Commissioner Saul had the constitutional authority to act on Plaintiff's application and Plaintiff must show that he suffered some harm *caused by* the removal protections; the mere fact that the protections were unconstitutional did not, alone, harm Plaintiff.

Plaintiff next argues that in *Collins*, the Supreme Court remanded the question of whether the plaintiffs were entitled to relief to the lower court, so here the Court should remand to SSA for similar analysis. (Pl's Reply at 18–19.) The Supreme Court remanded in *Collins* because the arguments over appropriate relief required factual findings appropriately made in the first instance by a district court. *Collins*, 141 S. Ct. at 1789. Remand to SSA is not required here because this Court is fully competent to resolve any factual questions surrounding possible relief for the constitutional violation, and Plaintiff presents no argument that SSA is the appropriate body to make those factual findings in the first instance.

Plaintiff next cites several changes Commissioner Saul made to the policies and operations for evaluating disability applications, arguing the Commissioner's unconstitutional removal protections and by extension unconstitutional promulgation of these changes harmed him by subjecting his application to those changes. (Pl's Reply at 19.) But Plaintiff does not show how the removal protections were causally connected to those changes. He offers neither argument nor evidence that Commissioner Saul made these changes because he was shielded from at-will removal, or that the Commissioner would not have taken these actions or would have taken different actions if he was removable at-will. *See Collins*, 141 S. Ct. at 1788–89. As for the specific changes he identifies, he does not describe how they did, or could have, made a difference in the determination reached by the ALJ.

Plaintiff next argues that the decision of the Appeals Council should be reversed because it was made after President Biden assumed office, and President Biden clearly wished to removal Saul. (Pl's Reply at 21.) Plaintiff has the wrong dates: the Appeals Council decided his appeal request on October 23, 2020, while President Biden assumed the office on January 20, 2021. President Biden's desire to remove Commissioner Saul had no impact on the earlier adjudication of Plaintiff's application. The Court notes also that at the time Plaintiff's application was decided, President Trump, who had appointed Commissioner Saul, was still in office, and Plaintiff points to no instance of the President expressing a desire to remove Commissioner Saul, let alone any attempt to do so.

The Court finds that Plaintiff has failed to show any causal link between the unconstitutional removal protection and the denial of his application. This reasoning and

16

result align with the decisions of other courts in the Eighth Circuit that have considered the issue. *See, e.g., Jean P. v. Kijakazi*, No. 8:21-CV-200, 2022 WL 1505797, at *14 (D. Neb. May 12, 2022); *Lisa D. v. Kijakazi*, No. 8:21-CV-294, 2022 WL 952778, at *7 (D. Neb. Mar. 30, 2022); *Watt v. Kijakazi*, No. 4:21-CV-00030 (LPR/JTK), 2022 WL 798337, at *5 (E.D. Ark. Mar. 10, 2022); *Alice T. v. Kijakazi*, No. 8:21-CV-14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021). Therefore, the Court does not recommend that this matter be reversed and remanded on the basis of this harmless constitutional error.[6]

### 3. The Commissioner's Other Arguments

Although the above discussion disposes of Plaintiff's constitutional argument, the Court will briefly address alternative arguments raised by the Commissioner.

The Commissioner argues that if the removal protections robbed the Commissioner (and his delegated officers) of the authority to determine Plaintiff's application, it robbed that authority from all ALJs, leaving no one to decide Plaintiff's application and denying him the ability to gain benefits; therefore, the Rule of Necessity provides a reason to not reverse. (Def's Mem. at 15–16.) Plaintiff counters that there was no necessity because the government itself created the unconstitutional conditions and failed to remedy them, and the Commissioner could step aside for an Acting Commissioner to take over. (Pl's Reply at 26–27.)

The Rule of Necessity "allows a judge, normally disqualified, to hear a case when

---

[6] Though *Collins* does not use the language of harmless constitutional error, the Commissioner persuasively argues that the case's position on the availability of a remedy for unconstitutional removal protections tracks with the Supreme Court's jurisprudence on harmless error. (Def's Mem. at 12–13.)

the case cannot be heard otherwise." *Glick v. Edwards*, 803 F.3d 505, 509 (9th Cir. 2015) (quotation omitted) (citing *Ignacio v. Judges of the U.S. Court of Appeals for the Ninth Circuit,* 453 F.3d 1160, 1164 (9th Cir.2006)). The Rule of Necessity operates to ensure that a claimant can have his statutory or constitutional right to an adjudication vindicated in circumstances when disqualification of all adjudicators would leave them with no such opportunity. *United States v. Will*, 449 U.S. 200, 213–16 (1980). The rule is most often invoked when a decision-maker is presumptively biased because of some personal interest in the outcome of an adjudication, but all others authorized to adjudicate the issue share that disqualifying interest. *See, e.g., F.T.C. v. Cement Inst.*, 333 U.S. 683, 700–03 (1948) (holding that FTC commissioners could adjudicate claims that a certain business practice was an illegal restraint of trade even though they had previously expressed official positions that the practice was illegal, because only they were authorized to decide the case); *Will*, 449 U.S. at 211–17 (holding that the Rule of Necessity permitted federal judges to adjudicate claims involving the Compensation Clause and legislation for paying federal judges even though all had an interest in the outcome, because if all recused there would be no one to adjudicate the claims). The Supreme Court has suggested that the rule may apply when all adjudicators are disqualified by a common constitutional flaw in their authority. *See Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055, n. 5 (2018) (reasoning in *dicta* that if all SEC ALJs were disqualified from adjudicating a case due to an agency-wide Appointment Clause violation, the Rule of Necessity would "presumably kick in" to allow the SEC to do the hearing.)

The Court agrees that the Rule of Necessity provides an alternative basis for

concluding that this case need not be remanded on account of the unconstitutional removal protections. Plaintiff argues the rule should not apply when the government itself failed to remedy the unconstitutional protections, but the Court has seen no caselaw suggesting that as an exception, nor does it follow that *Congress's* failure to excise the removal protections from the statute obviates the necessity for the SSA to decide disability applications. Indeed, all of those individuals whose applications were processed and benefits granted by SSA ALJs and Appeals Councils while the removal protections were in place would argue there was a great necessity for the SSA to do precisely that.

Plaintiff's argument that there is no necessity because the constitutional defect could be remedied if the Commissioner steps aside for an Acting Commissioner who could be removed at-will is also unavailing. (Pl's Reply at 26.) Plaintiff's reasoning is essentially that the rule is not needed when the disqualified officer can resign his position and be replaced by another. But the rule exists to avoid the need for conflicted officers to resign and the ensuing delays and disruptions to adjudications that attend the process of replacing the officer. It says, in effect, that if all the *currently appointed* officers are disqualified, then none are because someone must adjudicate the claimant's claim.

> It is well established that actual disqualification of a member of a court of last resort will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated.

*Will*, 449 U.S. at 214 (quoting *State ex rel. Mitchell v. Sage Stores Co.*, 157 Kan. 622, 629 (1943). The Commissioner faces the choice to resign and prevent Plaintiff's case

19

from moving forward until a new Acting Commissioner steps in and grants the SSA ALJs proper authority, or to adjudicate the case despite the lack of authority because no one else can. The Rule of Necessity required the Commissioner (and therefore the ALJ and Appeals Council) to adjudicate the claim. Therefore, no remand is necessary.

## RECOMMENDATION

The Court respectfully recommends that:

1. Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED**;

2. Defendant's Motion for Summary Judgment [ECF No. 27] be **GRANTED**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 9, 2022
*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).